UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**GREGORY L PRICE**, and
**DEBORAH ANN PRICE**,

Debtors.

Case No.  **07-61449-7**

## *MEMORANDUM of DECISION*

At Butte in said District this 19th day of March, 2008.

In this Chapter 7 bankruptcy, after due notice, a hearing was held March 11, 2008, in Billings on Debtors' Motion for Sanctions for Violation of the Automatic Stay filed February 11, 2008, together with Summit Credit Union's ("SCU") opposition thereto.  Debtors were represented at the hearing by attorney Dane Schofield ("Schofield") of Billings, Montana and SCU was represented at the hearing by attorney Margy Bonner ("Bonner") of Billings, Montana. The Chapter 7 Trustee, Joseph V. Womack of Billings, Montana, also appeared at the hearing. Debtor Gregory Price ("Price") testified as did attorneys Schofield and Bonner.  No exhibits were offered into evidence.

### FACTS

The record and testimony show that Price is employed by Wells Fargo.  Prior to Debtors' petition date, SCU was garnishing Price's wages.  Knowing that Price would be paid on Friday, December 14, 2007, Debtors filed their bankruptcy petition on Thursday, December 13, 2007,

with the intent of avoiding SCU's garnishment of Price's December 14, 2007, paycheck.  Upon filing Debtors' bankruptcy petition, Debtors' counsel immediately notified Wells Fargo and SCU's levying agent that Debtors had filed for protection under the Bankruptcy Code.

Notification of Debtors' bankruptcy was mailed to SCU and thus, SCU did not receive notification of Debtors' bankruptcy until December 17th or 18th.  Upon learning of Debtors' bankruptcy, Bonner testified that SCU immediately sent the levying agent a release of the garnishment.  Notwithstanding SCU's release of the garnishment, the levying agent and Wells Fargo garnished $295.64 from Price's December 14, 2008, wages and again garnished $263.68 from the wages paid to Price on December 28, 2008.  Schofield contacted Bonner in late January of 2008 about the garnishments, and from Debtors' February 11, 2008, Motion for Sanctions, it appears that SCU returned the December 28, 2008, garnishment, along with $29.56 of the December 14, 2008,[1] garnishment to Debtors on or about February 4, 2008, and February 6, 2008, respectively.[2]  SCU maintains that $237.32 of the December 14, 2008, garnishment, which relates to wages earned pre-petition, may be an asset of the bankruptcy estate.  Consequently, on February 8, 2008, Bonner filed a Motion to Deposit Garnished Funds seeking to deposit the sum of $237.32 into the Court's registry, thereby allowing the Court to determine whether the funds should be paid to the Trustee or Debtors.

---

[1]  SCU deposited funds totaling $237.32 into the Court's registry and SCU states that the total amount garnished from Price's wages on December 14, 2007, was $263.68.  The difference between the two aforementioned amounts of $26.36 does not match with the amount of $29.56 that Debtors claim they received from SCU.

[2]  In discussing the December 14, 2008, garnishment, Debtors state in their Motion that SCU "returned a partial payment in the amount of $29.56 on February 6, 2008".  As for the December 28, 2008, garnishment, Debtors assert that SCU "failed to return such money until 02/04/2008."

Bonner testified at the hearing that she secured a judgment against Debtors on behalf of SCU. A writ of garnishment was issued by the district court that entered judgment against the Debtors. The garnishment was forwarded by the levying agent to Bonner's law office. Bonner would then forward the garnishments to SCU. Bonner assumed that Wells Fargo and the levying agent had honored SCU's garnishment release and thus, when Bonner received the funds from the levying agent after Debtors' petition date, she assumed such funds related to garnishments that occurred pre-petition. Immediately after Schofield contacted Bonner about the garnishments in January of 2008, Bonner did some investigation and learned that Price's December 14, 2007, and December 28, 2007, paychecks had been garnished. Upon learning of the December 14, 2007, and December 28, 2007, garnishments, Bonner immediately repaid some funds to Debtors and sought to deposit the remainder of the funds in the Court's registry.

Price testified that the garnishments put a strain on Debtors, especially as the garnishments happened right around Christmas. Price stated that Debtors had to borrow money from Price's mother-in-law to get through the holidays. Schofield also argued that sanctions were appropriate in this case because, but for the post-petition garnishments, the Trustee would not have laid claim to such funds.[3] Schofield stated at the hearing that the costs incurred by Debtors in prosecuting their request for sanctions will be approximately $700.00 to $750.00, which amount stems from Schofield's fees.

## DISCUSSION

The Debtors' filing of their Chapter 7 bankruptcy petition on December 13, 2007, gave

---

[3] The Trustee filed a Motion for Turnover of Funds on March 10, 2008, seeking the turnover of the funds deposited in this Court's registry by SCU.

3

rise to an "automatic stay". 11 U.S.C. § 362(a). The Ninth Circuit construed the automatic stay in *In re Gruntz*, 202 F.3d 1074, 1081-82 (9th Cir. 2000):

> The automatic stay is self-executing, effective upon the filing of the bankruptcy petition. *See* 11 U.S.C. § 362(a); *The Minoco Group of Companies v. First State Underwriters Agency of New England Reinsurance Corp.* (*In re The Minoco Group of Companies*), 799 F.2d 517, 520 (9th Cir.1986). The automatic stay sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor, enforcement of prior judgments, perfection of liens, and "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6).

The Ninth Circuit Bankruptcy Appellate Panel ("BAP") similarly explained the automatic stay in *Balyeat Law Offices, P.C. v. Campbell*, 14 Mont. B.R. 132, 136-37 (9th Cir. BAP 1995):

> "Congress' intent in enacting § 362(a) is clear--it wanted to stop collection efforts for all antecedent debts." *Gonzales v. Parks*, 830 F.2d 1033, 1035 (9th Cir. 1987) (*quoting In re M. Frenville Co., Inc*., 744 F.2d 332, 334 (3rd Cir. 1984). *cert. denied*, 469 U.S. 1160 (1985). "Section 362(a) automatically stays a wide array of collection and enforcement proceedings." *Pennsylvania Dept. of Public Welfare v. Davenport*, 49 5 U.S. 552, 560 (1990). See also *Delpit v. C.I.R.*, 18 F.3d 768, 770 n.1 (9th Cir. 1994). "Section 362 is extremely broad in scope and should apply to almost any type of formal or informal action." *Id.* at 771 (*quoting 2 COLLIER ON BANKRUPTCY*, § 362.04 at 362-34 (15th ed. 1993). It "prohibits acts that, but for the stay, would be lawful." *In re Zartun*, 30 B.R. 543, 545 (9th Cir. BAP 1983). The stay is created for the benefit of the debtor, the debtor's property and the debtor's estate. *In re Casqul of Nevada, Inc.*, 22 B.R. 65, 66 (9th Cir. BAP 1982).

The Ninth Circuit has repeatedly reiterated the broad scope of the automatic stay as "one of the most important protections in bankruptcy law." *See In re Risner*, 317 B.R. 830, 835 (Bankr. D. Idaho 2004), quoting *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1214-15 (9th Cir. 2002)[4];

---

[4] At footnote 5 *Risner* quotes *Eskanos & Adler* that: "Consistent with the plain and unambiguous meaning of the statute, and consonant with Congressional intent, we hold that § 362(a)(1) imposes an affirmative duty to discontinue post-petition collection actions." 317 B.R at 835 n.5, quoting *Esklanos & Adler*, 309 F.3d at 1215.

*Hillis Motors, Inc. v. Hawaii Auto Dealers' Assoc.*, 997 F.2d 581, 585 (9th Cir. 1993).

Given the broad, self-executing, automatic stay described above, the Court finds that SCU violated the automatic stay by accepting funds from the levying agent after Debtors' petition date. *Gruntz*, 292 F.3d at 1082; *40235 Washington Street Corp. v. Lusardi*, 329 F.3d 1076, 1082 (9th Cir. 2003); *Schwartz v. United States*, 954 F.2d 569, 570-71, 575 (9th Cir.1992); *In re Deines*, 17 Mont. B.R. 114, 115 (Bankr. D. Mont. 1998); *Hillis Motors, Inc. v. Hawaii Auto Dealers' Assoc.*, 997 F.2d at 586.

With respect to sanctionable post-petition actions, a creditor who attempts collection of prepetition debt after it knows of the debtor's bankruptcy is subject to sanctions for willful violation of the automatic stay. *In re Del Mission Ltd.*, 98 F.3d 1147, 1151 (9th Cir.1996); *see In re Goodman*, 991 F.2d 613 (9th Cir.1993). This Court construed 11 U.S.C. § 362(a) & (k)[5] in *In re Reece*, 15 Mont. B.R. 474, 477-78 (Bankr. D. Mont. 1996):

> As to the relevant Bankruptcy Code provisions, when a debtor files a bankruptcy petition, a stay is automatically imposed applicable against all creditor collection activity. 11 U.S.C. § 362(a). The stay is effective upon the date of the filing of the petition; and does not depend on formal service of process. *In re Smith*, 876 F.2d 524, 526 (6th Cir.1989). Furthermore, the Code requires the creditor, pursuant to § 362(d), to take affirmative action to obtain relief from stay from a bankruptcy court. In the absence of affirmative action on the part of the creditor to obtain relief from stay, § 362(a) prevents the creditor from attempting to enforce its rights against a debtor. See *In re Sharon*, 200 B.R. 181, 187 (Bankr. S.D.Oh. 1996).

> Turning to the law governing violation of the automatic stay, 11 U.S.C. § 362[k], this Court has held:

> > To be actionable, a violation of the automatic stay must be

---

[5] Section 362(h) was renumbered § 362(k) in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") (Pub. L. 109-8), effective October 17, 2005. References in earlier cases to § 362(h) have been changed.

> "willful." In *In re Bloom*, 875 F.2d 224, 227 (9th Cir.1989), the term "willful", as used in § 362[k] was addressed and defined: "This circuit has not defined 'willful' as it is used in subsection [k]. A useful definition, which we now adopt, was provided by the bankruptcy court for the district of the District of Columbia: A 'willful violation' does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was 'willful' or whether compensation must be awarded. *Inslaw, Inc. v. United States* (*In re Inslaw, Inc.*,), 83 B.R. 89, 165 (Bankr.D.D.C.1988)."

*In re Christopherson,* 8 Mont. B.R. 213, 111 B.R. 920, 922 (Bankr. Mont. 1990).

The Court further explained:

> "[T]he relief provided for willful violation of the stay under 11 U.S.C. § 362[k] is mandatory" since § 362[k] supplements but does not replace the pre-existing remedy of civil contempt. *In re Lile*, 103 B.R. 830, 836 (Bankr.S.D.Tex.1989). Thus, when a party acts with knowledge of a pending bankruptcy, a violation of the stay is considered willful and damages must be assessed, *Id*. at 836, for "[T]he creditor takes the risk of being assessed for damages if he fails to obtain clarification from the bankruptcy court." *Id*. at 837, citing *In re Clark*, 49 B.R. 704, 707 (Bankr.D.Guam 1985); and *In re Pody*, 42 B.R. 570, 573-574 (Bankr.N.D.Ala.1984). *Lile*, supra, at 841 further states that where a Debtor is forced to resort to the courts to enforce his right, attorney's fees should be awarded to the Debtor under § 362[k]. See also, *In re Price*, 103 B.R. 989 (Bankr.N.D.Ill.1989).

*Id*. at 923.

The above test for willful violation under § 362(k), (1) that the creditor knew of the stay, and (2) the creditor's actions which violated the stay were intentional, was repeated in *Eskanos & Adler v. Roman (In re Roman)*, 283 B.R. 1, 8 (9th Cir. BAP 2002), which also noted the above standard that lack of specific intent to violate the stay is not a required element to find a willful violation, and that "it is clear that once a creditor or actor learns or is put on notice of a

bankruptcy filing, any actions intentionally taken thereafter are 'willful' within the contemplation of § 362[k]." *Risner*, 317 B.R. at 835; *Eskanos & Adler*, 309 F.3d at 1214-15.  In *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003), the Ninth Circuit noted that § 362(k) provides for damages for willful violation of the stay upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were willful.  *See Havelock v. Taxel*, 67 F.3d 187, 191 (9th Cir. 1995) (cited in *Roman*, 283 B.R. at 12-13).

In the case *sub judice*, Bonner testified that upon learning of Debtors' bankruptcy, she took immediate steps to stop the garnishment of Price's wages by filing a release of the garnishment.  While Bonner's testimony was not challenged, it certainly would have strengthened SCU's case if Bonner would have offered the release of garnishment into evidence.  Furthermore, the Court is troubled that SCU accepted the two garnishments, knowing that Debtors had sought protection under the Bankruptcy Code.  As explained by the BAP, an innocent stay violation can become willful if the creditor fails to remedy the violation after receiving notice of the stay.  *Del Mission Ltd.*, 98 F.3d at 1151;  *Abrams v. Southwest Leasing and Rental Inc.*, 127 B.R. 239, 241-44 (9th Cir. BAP 1991).  This Court is not persuaded by Bonner's testimony that she assumed the post-petition payments were attributable to pre-petition garnishments.  SCU's acceptance of the garnishments was intentional with knowledge of the bankruptcy and therefore willful, and willful violations of the stay will not go totally unpunished. *In re Hargraves*, 16 Mont. B.R. 496, 501 (Bankr. D. Mont. 1998).  Indeed, a red flag should have gone off when Bonner received two post-petition payments from the garnishing agent.  Instead of questioning the payments, Bonner simply accepted the payments and forwarded the same to SCU.  Thus, the Court finds that SCU's post-petition acceptance of garnished funds was a willful

violation of the stay.

Having concluded that SCU's post-petition acceptance of monies from the garnishing agent is the type of intentional act that would give rise to sanctions under § 362(k), the Court must now fashion an appropriate remedy.  While the Court is not persuaded by SCU's claim of innocence, the Court is similarly not convinced that the damages sought by Debtors in this case are solely attributable to SCU.  The Court is deeply troubled by the fact that Debtors intentionally filed bankruptcy one day prior to Price's December 14, 2007, pay date.  Schofield testified that he immediately notified Wells Fargo and the levying agent about Debtors' bankruptcy, but rather than immediately notify SCU or its counsel, allowed SCU to receive its notification through the mail.  The Court ponders why Debtors would immediately contact Wells Fargo and the levying agent, but elect not to immediately contact SCU or its counsel.  Furthermore, the Court is curious as to why Debtors did not similarly include Wells Fargo and the levying agent in this sanction action because according to Schofield, Wells Fargo and the levying agent had immediate notice of Debtors' bankruptcy, yet took no steps to stop the garnishment of Price's wages.

Price also claims that SCU's post-petition garnishment of his wages during the holiday season caused a financial strain on Debtors.  This Court has not yet ruled on the Trustee's motion for turnover and thus, it is not yet clear whether Debtors are entitled to the $237.32 that was deposited with the Court by SCU.  Nevertheless, it is disingenuous of Debtors' counsel to argue at this juncture that SCU's December 14, 2008, garnishment is a sanctionable event on the basis that but for the garnishment, Debtors could have taken the money and the Trustee would never have laid claim to such funds.

In fashioning a punishment that fits the violation in this case, the Court finds the BAP's

8

decision in *Roman, supra*, instructive. In *Roman*, the BAP endorsed the principles used in 11 U.S.C. § 330 for compensating attorneys for fees awarded under § 362(k), but applied the Ninth Circuit's "more generalized standard" for finding reasonable damages for a willful stay violation:

> We will affirm an award of damages unless it is clearly unsupported by the evidence or grossly excessive, monstrous, or shocking to the conscience.

*Roman*, 283 B.R. at 11, quoting *Computer Communications, Inc., v. Codex Corp. (In re Computer Communications, Inc.)*, 824 F.2d 725, 731 (9th Cir. 1987). The BAP observed that fee shifting statutes like § 362(k) give debtors an opportunity to use the statute as a sword rather than a shield against creditors, to courts' dismay, and that rewarding debtors too lavishly in § 362(k) actions "will encourage a cottage industry of precipitous § 362[k] litigation". *Roman*, 283 B.R. at 11, quoting *McLaughlin v. Fireman's Trust Mortgage Corp. (In re McLaughlin)*, 96 B.R. 554, 560 (Bankr. E.D. Pa. 1989). The BAP in *Roman* further explained:

> Consequently, there is also a consensus in the case law that, in determining reasonable damages under § 362[k], the bankruptcy court must examine whether the debtor could have mitigated the damages. Generally, in determining the appropriate amount of attorneys' fees to award as a sanction, the court looks to two factors: "(1) what expenses or costs resulted from the violation and (2) what portion of those costs was reasonable, as opposed to costs that could have been mitigated." *In re GeneSys, Inc.,* 273 B.R. 290, 296 (Bankr.D.C.2001) (applying contempt sanctions under § 105). *See also: Computer Communications,* 824 F.2d at 731; *In re Sammon,* 253 B.R. 672, 681 (Bankr.D.S.C.2000); *Lori v. Lori (In re Lori),* 241 B.R. 353, 356 (Bankr.M.D.Pa.1999); *In re Esposito,* 154 B.R. 1011, 1015 (Bankr.N.D.Ga.1993).
>
> Courts especially scrutinize cases where the debtor's only injuries are those incurred in litigating the motion for sanctions, and where there exist no circumstances warranting punitive damages. *See McHenry,* 179 B.R. at 168; *Shadduck v. Rodolakis,* 221 B.R. 573, 585 (D.Mass.1998) (requiring a debtor to attempt to resolve the dispute prior to filing a motion for sanctions); *In re Craine,* 206 B.R. 594 (Bankr.M.D.Fla.1997) (finding no injury); *In re Brock Utils. & Grading, Inc.,* 185 B.R. 719 (Bankr.E.D.N.C.1995) (same); *McLaughlin,* 96 B.R. at 563 (reducing fees).

*Roman,* 283 B.R. at 12.

As previously noted, the instant case requires special scrutiny because the Court sees no basis to award punitive damages and the only damages that Debtors' counsel alluded to at the hearing were attorney fees of $700.00 to $750.00. After special scrutiny and consideration of the two factors articulated in *Roman* and after comparison with other cases, this Court finds and concludes that the reasonable fees in this case are those that Debtors incurred up to the time that SCU returned the December 28, 2007, garnishment and a portion of the December 14, 2007, garnishment to Debtors and deposited the remainder of the December 14, 2007, garnishment with the Court. The attorney fees incurred by Debtors after February 4, 2008, or thereabouts, could have been avoided altogether and will not be awarded as a sanction against SCU. Because the Court does not have a fee affidavit and no fee testimony or other fee evidence before it, and rather than reopen the record, the Court will sanction SCU the sum of $250.00 for its acceptance of the post-petition garnishments from Debtors and such amount shall be immediately paid to the Debtors.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334 and 157.

2. The pending Debtors' Motion for Sanctions for violation of the stay is a core proceeding under 28 U.S.C. § 157(b).

3. Debtors proved willful violations of the automatic stay by SCU in violation of 11 U.S.C. § 362(k) by a preponderance of the evidence, including Bonner's admission that she accepted and then forwarded the post-petition garnishments to SCU after SCU had knowledge of

Debtors' bankruptcy, which post-petition actions constitute willful violations of the stay and subject SCU to sanctions.

    4. Debtors' damages, according to Schofield, consist solely of their attorney fees in the amount of $700.00 to $750.00. The Court finds no damages for lost wages or other expenses and emotional distress, and did not find it appropriate based on the record to impose punitive damages.

    6. Debtors' attorney's fees in the sum of $250.00 resulted from SCU's willful violations of the stay, are reasonable and could not have been mitigated by Debtors' under § 362(k). *In re Roman*, 283 B.R. at 12. The Court will therefore enter a separate order providing s follows:

    IT IS ORDERED that Debtors' Motion for Sanctions for Violation of the Automatic Stay filed February 11, 2008, is granted, in part; and Debtors are awarded the sum of $250.00 for SCU's willful violations of the automatic stay in violation of 11 U.S.C. § 362(k).

                                            BY THE COURT

                                            HON. RALPH B. KIRSCHER
                                            U.S. Bankruptcy Judge
                                            United States Bankruptcy Court
                                            District of Montana